# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LOPEZ, | 1:10-cv-00390-OWW-JLT HC |
| Petitioner, | ORDER DENYING PETITIONER'S MOTION FOR ORDER TO PLACE PETITIONER AND ASSISTANT ON PRIORITY LEGAL USER STATUS FOR ONE YEAR (Doc. 23) |
| v. | |
| MICHAEL MARTEL, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner originally filed his federal petition on January 25, 2010 in the Sacramento Division of this Court. (Doc. 1). On March 5, 2010, the case was transferred to the Fresno Division. (Doc. 8). On March 19, 2010, Petitioner filed a first amended petition raising four claims: (1) failure of prosecutor to disclose exculpatory evidence; (2) statute under which Petitioner was convicted was unconstitutional; (3) Petitioner's Sixth Amendment rights were violated by juror misconduct; and (4) Petitioner's constitutional rights were violated when his conviction was obtained by an unconstitutional amendment to an indictment. (Doc. 14, pp. 4-5).

On April 29, 2010, the Court issued an Order to Show Cause why the petition should not be dismissed because it contained no exhausted claims. (Doc. 16). On May 17, 2010, Petitioner filed a motion to stay and also lodged a second amended petition containing two claims: (1) the trial court's

1  denial of a motion for a new trial based on juror misconduct violated Petitioner's federal
2  constitutional rights; and (2) insufficient evidence was presented to support the conviction.  (Doc.
3  18).  Both of these claims are exhausted as they were presented to the California Supreme Court in a
4  Petition for Review during Petitioner's direct appeal.  (Doc. 14, pp. 326-327).

5        On June 25, 2010, the Court granted Petitioner's motion for stay of proceedings while he
6  exhausts additional claims.  (Doc. 19).  As part of that order, the case has been administratively
7  closed.  On September 17, 2010, Petitioner filed the instant motion, seeking an order from this Court
8  placing Petitioner and his "jailhouse lawyer" on "priority legal user" status at the prison's law library
9  for a period of one year.  (Doc. 23).

10  **DISCUSSION**

11        As grounds for Petitioner's motion, Petitioner alleges that "priority legal status" is necessary
12  for himself and his legal assistant, Jorss, because of the restrictions imposed on inmates' access to
13  the prison law library by the prison administrators.  (Id., p. 4).  Petitioner alleges that the "library
14  policy is that they will only grant 30-days of PLU, after that, if I need more time, I would have to
15  write and explain why I need more time or by submitting a new court order for more time."  (Id.).  In
16  Jorss' declaration, he contends that in order for him to meaningfully assist Petitioner, he needs
17  access to the prison law library "on a regular basis."  (Id., p. 5).  Jorss explains that "an inmate
18  without PLU status can only access the law library at a minimum two days a week, with a total time
19  of three-quarters of an hour to one and one-half hours a day in the law library."  (Id., p. 6).   Jorss
20  goes on to explain that the prison library is on a modified schedule with closures throughout the
21  week, on a rotating weekly basis.  (Id.).  Jorss declares that giving him and Petitioner priority legal
22  status for one year will permit him the regular access he needs to assist Petitioner and also permit the
23  two to "confer in the law library on a regular basis."  (Id., p. 7).

24        As Charles Roger Jorss is not an attorney or a party to this case, he may not file documents in
25  the case or on behalf of the Petitioner.  By doing so, Jorss would be engaging in the unauthorized

practice of law in violation of state and federal provisions governing the practice of law.[1]

This prohibition, however, does not preclude inmates from assisting other prisoners in the preparation of petitions for post-conviction relief, in the context sanctioned by the Supreme Court in Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747 (1969).  Inmate writers may assist other prisoners in the *preparation* of post-conviction relief.  However, no authority authorizes them to engage in the practice of law by filing papers with the court as the inmate's legal representative.  Storseth v. Spellman, 654 F.2d 1349, 1355 (9th Cir. 1981).  Similarly, the California Supreme Court has held that absent extraordinary circumstances, an inmate has no right to file papers on behalf of another inmate.  In Re Harrell, 2 Cal.3d 675, 689, 87 Cal.Rptr. 504 (1970).  The principle announced in Johnson seeks to insure that a disadvantaged prisoner will receive aid in his personal efforts to apply to the courts for relief--not that such a prisoner will be represented by another inmate before the courts-- and the courts will refuse to entertain any application made by a prisoner other than him for whom relief is sought.

Because Jorss is neither a party to this case nor the attorney of record for Petitioner or another party, he has no legal standing or status in this case.   Accordingly, within its habeas jurisdiction, the Court has no inherent power to order Respondent to do anything with respect to Jorss.  Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985)("[A federal court] may not attempt to determine the rights of persons not before the court." ).   Hence, the Court lacks the power to order Respondent to place a non-party, non-attorney inmate, such as Jorss, on priority legal user status regarding that non-party, non-attorney inmate's access to his own prison law library.

Moreover, even assuming, arguendo, that the Court did have such authority within its habeas jurisdiction, it would be loathe to exercise it.  The library access policy outlined by Jorss seems eminently reasonable given the budget constraints that prompted such modifications.  Respondent appears to have attempted to minimize the effects of such restrictions on the general inmate population by imposing a revolving system of restrictions that evenly "distributes" them and by limiting priority access to those with imminent deadlines.

---

[1] This prohibition does not preclude inmates from assisting other prisoners in the preparation of petitions for post-conviction relief, in the context sanctioned by the Supreme Court in Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747 (1969).

1   Even were that not so, federal courts are justifiably reticent to micro-manage a state
2   respondent's decisions regarding the day-to-day handling of prison administration.  "[F]ederal courts
3   ought to afford appropriate deference and flexibility to state officials trying to manage a volatile
4   environment....Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of
5   prison life...."  Sandin v. Conner, 515 U.S. 472, 482 (1995).  In Procunier v. Martinez, 416 U.S. 396,
6   404-405 (1974), overruled in part on other grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989), the
7   Supreme Court explained the basis for this deference:

> Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration.  In part this policy is the product of various limitations on the scope of federal review of conditions in state penal institutions.  More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention.  Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication.  Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.  Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.  For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.  Judicial recognition of that fact reflects no more than a healthy sense of realism.

Procunier, 416 U.S. at 404-405.  Thus, even if the question conferring "priority legal user" status on Jorss were cognizable in these habeas proceedings, for the reasons set forth in Sandin and Procunier, this Court would be extremely hesitant to second-guess Respondent's decision to impose apparently reasonable restrictions for law library access on the entire prison population based on current budgetary considerations. Accordingly, the Court will deny Petitioner's motion as it pertains to Jorss.

   As the motion pertains to Petitioner, the Court will also deny the motion because Petitioner has failed to establish that such an order is required under the circumstances alleged in his papers. Jorss' declaration indicates that the because Petitioner is in the "Extended Outpatient Program," the prison's modification of law library hours does not affect him. (Doc. 23, p. 7).  Indeed, Jorss goes on to declare that such modifications in prison law library access affect only Jorss' ability to access the law library, not Petitioner's situation.  (Id.).   Since the Court has already denied the request for placing Jorss on priority status, the motion will be denied as to Petitioner as well.

**ORDER**

For the foregoing reasons, it is HEREBY ORDERED that Petitioner's motion for an order placing Petitioner and his legal assistant on priority legal user status for one year (Doc. 23), is DENIED.

IT IS SO ORDERED.

Dated:   **October 6, 2010**                                                     /s/ Jennifer L. Thurston
                                                                                          UNITED STATES MAGISTRATE JUDGE